IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| COVERTECH FABRICATING, INC., | ) | |
|---|---|---|
| | ) | CIVIL ACTION NO. 3:13-150 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| TVM BUILDING PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

Plaintiff Covertech Fabricating, Inc. ("Covertech"), a manufacturer of insulation products, brings this action against its former distributor, Defendant TVM Building Products, Inc. ("TVM"), for claims relating to trademark infringement, dilution, unfair competition, breach of contract, and fraud. Presently before the Court is Covertech's motion to dismiss Count IV of TVM's amended counterclaim. (ECF No. 53). For the reasons that follow, Covertech's motion will be denied.

**II.    Jurisdiction and Venue**

The Court exercises diversity jurisdiction over TVM's counterclaims pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the suit is between citizens of different states. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to the claims occurred in this judicial district.

**III.     Background**

Covertech is a Canadian manufacturer of insulation products. Covertech markets, sells, and distributes its products through distributors and direct commercial sales. (Compl. ¶ 6). TVM is an Illinois corporation with its principal place of business located in Johnstown, Pennsylvania. (*Id.* ¶ 7). TVM serves as a distributor of insulation and other building products manufactured by other companies. (*Id.* ¶ 8).

Beginning in 1998, Covertech and TVM formed a business relationship in which TVM marketed and sold Covertech insulation products in the United States. (Compl. ¶¶ 29–32). According to Covertech, the parties entered into a verbal "exclusive distribution agreement" where TVM served as Covertech's exclusive distributor of RFOIL, a reflective insulation material. (*Id.* ¶ 30). TVM claims that, although the parties never executed a written agreement, they reached an "oral understanding that Covertech would only sell product in the United States through TVM and TVM would only market Covertech's reflective insulation products." (ECF No. 60-2 at 4).

Covertech terminated the exclusive distribution agreement in or around 2006 after allegedly discovering that TVM had been distributing insulation products made by other manufacturers. (Compl. ¶ 33). TVM initially continued to serve as a non-exclusive distributor for Covertech, buying Covertech's products and selling them under its own private label. (*Id.* ¶ 35). Eventually, the parties ceased doing business entirely because TVM allegedly failed to pay Covertech's invoices. (*Id.* ¶ 39).

On May 21, 2013, Covertech filed a complaint against TVM, asserting claims such as trademark infringement, breach of contract, and fraud. According to Covertech, TVM continues to use Covertech's name, trademarks, and brands in connection with the sale of insulation products made by other companies. (Compl. ¶¶ 40–53). As well, Covertech asserts that TVM fraudulently provided Covertech warranties on insulation made by other companies and that Covertech has spent thousands of dollars settling warranty claims for defective insulation that Covertech did not manufacture. (Id. ¶¶ 54–61). Even further, Covertech claims that TVM breached its agreement to pay Covertech in accordance with certain settlement agreements on warranty claims. (Id. ¶¶ 62–71).

In response, TVM has filed an amended counterclaim, asserting, among other things, a claim of fraud against Covertech. TVM avers that, beginning in 2004, it received warranty claims from customers regarding the degradation of RFOIL. (Am. Countercl. ¶¶ 199–202). Covertech allegedly informed TVM that this degradation—which consisted of cracking and flaking of the product surface—was due to sunlight emitted into open-sided buildings. In 2005, and after consulting with Covertech, TVM issued an Urgent Notice to its customers warning them not to use RFOIL in buildings "where RFOIL would be exposed to direct sunlight or reflective light from the floor." (Id. ¶ 204). The Urgent Notice further stated that the "[u]se of these products in buildings with skylights is acceptable since UV light is diffused by the glass." (Id.).

In 2007, TVM received additional warranty claims on the RFOIL. (Am. Countercl. ¶ 208). At that time, Covertech allegedly informed TVM that any exposure to sunlight— whether direct or indirect—would cause degradation to the RFOIL. (Id.). TVM further

3

claims that, due to the RFOIL degradation problem, it has experienced a "dramatic and precipitous decline" in sales and that selling defective product has harmed its business reputation. (*Id.* ¶¶ 211–12).

According to TVM, it was not until a November 17, 2011 deposition of Furio Orologio—the President of Covertech—that TVM discovered the supposedly fraudulent conduct now at issue. In a separate litigation in which both Covertech and TVM were defendants, Orologio apparently testified that "Covertech was aware since 2004, and possibly as early as 1998, that the RFOIL could not withstand either direct or indirect sunlight." (Am. Compl. ¶ 214). Based on Orologio's sworn statement, TVM claims that Covertech knew since 2004 that "[a]ny type of exposure to UV rays, even through windows, skylights[,] or open doors, would cause degradation." (*Id.*).

In support of its fraud claim, TVM asserts that it had no reason to believe Covertech knew since at least 2004 that any type of exposure to sunlight would cause degradation to the RFOIL. (Am. Compl. ¶ 215). TVM further asserts that it relied on Covertech's expertise regarding the suitability of the RFOIL and that Covertech should have known that the RFOIL would be used in buildings with skylights. (*Id.* ¶¶ 217–18). Finally, TVM asserts that, despite knowing the full extent of the degradation issue, "Covertech actively perpetuated its deceit by assisting in the preparation of and approval of the language contained in the Urgent Notice which advised customers that the RFOIL could be used in buildings with skylights." (*Id.* ¶ 220).

Covertech now moves to dismiss TVM's fraud claim under Federal Rule of Civil Procedure 12(b)(6). The motion has been fully briefed and is ripe for disposition.

4

**IV.     Standard of Review**

The standard of review for dismissal of a counterclaim under Rule 12(b)(6) is the same as that for dismissal of a complaint. *See, e.g.*, *PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 524 (W.D. Pa. 2011).

In determining the sufficiency of a pleading on a Rule 12(b)(6) challenge, the court must conduct a two-part analysis. First, the court must separate the factual allegations from the legal conclusions asserted. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must determine whether the factual allegations show that the claimant has a "plausible claim for relief." *Id.* at 211 (quotation omitted). The pleading need not include detailed allegations.[1] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, the court must accept as true the factual allegations in the pleading and construe them in the light most favorable to the claimant. *Id.* at 233. Nevertheless, "[t]hreadbare recitals of the elements of a cause of action" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, the claimant must allege sufficient facts that could, if established at trial, entitle her to relief. *Fowler*, 578 F.3d at 213.

**V.      Discussion**

Covertech asserts that TVM's fraud claim is time-barred by the applicable statute of limitations. Covertech also moves to dismiss TVM's claim under the gist of the action doctrine and the economic loss doctrine. The Court addresses each of these issues below.

---

[1] Covertech does not challenge the sufficiency of TVM's fraud claim under the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). To the extent a heightened pleading standard under Rule 9(b) applies, the pleading must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

5

A.      The statute of limitations

Covertech first argues that the applicable two-year statute of limitations has run on TVM's claim because TVM had "full knowledge of the UV issue in 2008, 2007, and even 2005." (ECF No. 54 at 5). According to Covertech, the allegations contained in TVM's fraud claim are "directly contradicted by statements TVM has made in court filings and under oath in the Texas Litigation." (Id.). Specifically, Covertech references two of TVM's court filings in that litigation: TVM's response to a motion for summary judgment and a declaration by TVM's president, Michael Boulding. (ECF No. 54-1; ECF No. 54-2).

In opposing the motion to dismiss, TVM argues that Covertech has misconstrued its fraud claim. "TVM does not contend that Covertech concealed from TVM the fact that Covertech knew the RFOIL would fail when exposed to UV rays be it direct, indirect, or reflected. What Covertech failed to disclose was the fact that it knew that RFOIL could not be used in any type of structure where there was any type of exposure to UV rays and that the only suitable use was in a building that was cloaked in absolute darkness." (ECF No. 60-2 at 8). Put another way, TVM argues that the fraudulent concealment relates to the acceptable uses of RFOIL, not to whether RFOIL degraded when exposed to direct or indirect sunlight.

As an initial matter, the Court must determine whether it can even consider TVM's court filings from a separate litigation. Generally, at the motion to dismiss stage, a court may not consider matters extraneous to the pleadings. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). Nevertheless, "an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered

without converting the motion [to dismiss] into one for summary judgment." *Id.* (internal citations and quotations omitted). Thus, a court may consider extraneous documents—such as matters of public record—if the plaintiff's claims are based on those documents. *See id.* at 1426; *In Re Westinghouse Sec. Litig.*, 90 F.3d 696, 707 (3d Cir. 1996); *In re Donald Trump Casino Sec. Lit.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993).

Here, the two court filings at issue are not integral to or explicitly relied upon in TVM's amended counterclaim. Thus, these documents are not part of the relevant record under consideration. Even if the Court considered these documents, it would find that they are not dispositive. TVM admits that it became partially aware of the degradation issue in 2005. At issue is Covertech's alleged concealment of the acceptable uses of RFOIL back in 2004—when the parties entered their distribution agreement. According to TVM, it was not until 2011 that TVM allegedly discovered that Covertech knew all along that RFOIL was not suitable for its intended uses. Under Pennsylvania's inherent fraud doctrine, the two-year statute of limitations will be tolled "until such time as the fraud has been revealed or should have been revealed by the exercise of due diligence by plaintiffs." *Sheet Metal Workers, Local 19 v. 2300 Grp., Inc.*, 949 F.2d 1274, 1280 (3d Cir. 1991) (citations omitted). Given that TVM filed its claim within two years of allegedly discovering the fraud, the statute of limitations appears to be satisfied.[2] At minimum, TVM has met its burden of pleading sufficient facts to survive a motion to dismiss on timeliness grounds.

---

[2] In its brief in support of the motion to dismiss, Covertech does not discuss TVM's due diligence. Thus, at this time, the Court does not consider whether TVM, in exercising due diligence, could have discovered the alleged fraud before November 2011. At a later stage of litigation, Covertech will be permitted to reassert arguments pertaining to the statute of limitations.

B.  The gist of the action and economic loss doctrines

In addition to arguing that the applicable statute of limitations bars TVM's fraud claim, Covertech asserts that TVM's claim must be dismissed under the gist of the action doctrine and the economic loss doctrine. The Court explains the basic tenets of these Pennsylvania doctrines and then addresses whether they apply in this case.

**1. Gist of the action doctrine**

Under Pennsylvania law, the gist of the action doctrine maintains the conceptual distinction between contract law and tort law. *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002).[3] The reasoning for this distinction is that

> tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus . . . To permit a promisee to sue his promisor in tort for breaches of contract inter se would erode the usual rules of contractual recovery and inject confusion into our well-settled forms of actions.

*Id.* (quotation omitted)). "As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *Id.* The mere existence of a contract does not preclude a party from bringing a tort claim, but "the [tortious acts] ascribed to defendant must be the gist of the action, the contract being collateral." *Id.* (quotation omitted).

In applying the gist of the action doctrine, courts will consider the claim as a whole in determining whether the "essential ground" of the action sounds in contract or

---

[3] To date, the Pennsylvania Supreme Court has not adopted the gist of the action doctrine, though the Third Circuit Court of Appeals and the Pennsylvania Superior Court have each noted its likeliness to do so. *See PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 527 (W.D. Pa. 2011) (collecting cases). In the context of fraud, the doctrine was first applied by a Pennsylvania appellate court in *etoll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002).

tort. *Am. Guarantee & Liab. Ins. Co. v. Fojanini*, 90 F. Supp. 2d 615, 622 & n.12 (E.D. Pa. 2000). Courts have consistently applied the doctrine to bar tort claims

>  (1) arising solely from a contract between the parties;
>
>  (2) where the duties allegedly breached were created and grounded in the contract itself;
>
>  (3) where the liability stems from a contract; or
>
>  (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005) (citations omitted). In the context of fraud, the Pennsylvania Superior Court has further elaborated that the focus is typically on "whether the fraud concerned the performance of contractual duties. If so, then the alleged fraud is generally held to be merely collateral to a contract claim for breach of those duties." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 19 (Pa. Super. Ct. 2002).

### 2. Economic loss doctrine

The economic loss doctrine is closely related to the gist of the action doctrine. Both doctrines share the common purpose of "maintaining the separate spheres of the law of contract and tort." *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 925 (Pa. Super. Ct. 1989). As a general rule, the economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002). Thus, "claims for only economic loss are appropriately brought as breach of contract or warranty claims rather than as tort claims." *Fid. & Deposit Co. of Maryland v. Int'l Bus. Machines Corp.*, CIV. 1:05-CV-0461, 2005 WL 2665326, at *2 (M.D. Pa. Oct. 19, 2005). "If a

claim is . . . one arising from failed economic expectations, i.e. expectations that the product would perform in the manner warranted, then tort recovery is inappropriate." *Id.* (quotation omitted).

The economic loss doctrine usually applies in products liability cases "where one party contracts for a product from another party and the product malfunctions, injuring only the product itself." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 n.11 (3d Cir. 2001); *Air Products & Chemicals, Inc. v. Eaton Metal Products Co.*, 256 F. Supp. 2d 329, 335 (E.D. Pa. 2003). Although the Pennsylvania Supreme Court has never applied the economic loss doctrine to a fraud claim, the Third Circuit has predicted that the doctrine would likely apply in this context except "where the claims [] arise independent[ly] of the underlying contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 676 (3d Cir. 2002); *accord Air Products & Chemicals, Inc.*, 256 F. Supp. 2d at 337.

### 3. Application

Having defined the gist of the action doctrine and the economic loss doctrine, the Court must now determine their application to the case at hand. Covertech claims that TVM's fraud claim must be dismissed under the gist of the action doctrine because the crux of TVM's claim is a contractual dispute: Covertech did not disclose information about the products being supplied under the parties' exclusive distribution agreement. (ECF No. 54 at 11–12). Similarly, Covertech argues that the economic loss doctrine bars TVM's fraud claim because TVM's alleged losses flow from the expected benefits under the parties' exclusive distribution agreement. (*Id.* at 10).

In response, TVM asserts that its fraud claim does not stem from any agreement between the parties. TVM argues that the only distribution agreement between the parties was an "oral understanding or handshake agreement that TVM would act as Covertech's exclusive distributor in the United States and [that] Covertech would not sell reflective insulations directly to United States customers." (ECF No. 60-2 at 12). In other words, TVM argues that any alleged agreement between the parties was not intertwined with Covertech's alleged concealment of the acceptable uses of RFOIL.

After reviewing the amended counterclaim in its entirety, the Court finds that it is currently premature to dismiss TVM's fraud claim under the gist of the action doctrine or the economic loss doctrine. Indeed, in the context of the gist of the action doctrine, "[c]aution must be exercised in dismissing a tort action on a motion to dismiss because whether tort and contract claims are separate and distinct can be a factually intensive inquiry." *Haymond v. Lundy*, 99-5015, 2000 WL 804432 (E.D. Pa. June 22, 2000, *aff'd sub nom. Lundy v. Hochberg*, 79 F. App'x 503 (3d Cir. 2003).[4] "It is especially inappropriate to dismiss a tort claim as duplicative of a contract claim when the contours of the agreement at issue are not clear." *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 567 (D.V.I. 2004) (citations omitted).

Here, the alleged distribution agreement between Covertech and TVM was never reduced to writing. The parties both acknowledge that they made an oral agreement of

---

[4] For further support on this point, see *CH & H Pennsylvania Properties, Inc. v. Heffernan*, CIV.A. 03-CV-2349, 2003 WL 22006799, at *6 n.6 (E.D. Pa. Aug. 20, 2003) (declining to apply the gist of the action doctrine without an intensive inquiry into the facts); *Charleswell v. Chase Manhattan Bank*, N.A., 308 F. Supp. 2d 545, 567 (D.V.I. 2004) (same); *Mill Run Associates v. Locke Prop. Co., Inc.*, 282 F. Supp. 2d 278, 291 (E.D. Pa. 2003) (same).

some kind but disagree on its material terms. In any event, it is impossible to determine the contours of the parties' alleged agreement at this stage, let alone determine whether the parties entered a binding agreement at all. Given that a fact-intensive inquiry will be necessary to determine whether the gist of the action doctrine or the economic loss doctrine applies in this case, the Court will not dismiss TVM's fraud claim at this time.[5]

VI. **Conclusion**

For the reasons stated in this memorandum, Covertech's motion to dismiss Count IV of TVM's amended counterclaim will be denied. This denial is without prejudice to Covertech's right to reassert these defenses at a later stage of litigation.

An appropriate order follows.

---

[5] The Court emphasizes that the gist of the action and economic loss doctrines are closely related, yet distinct concepts. Because the gist of the action doctrine focuses on whether a plaintiff's claim is based in contract rather than tort, the doctrine "call[s] for a fact-intensive judgment as to the true nature of a claim." *Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 386 (3d Cir. 2004). By contrast, a court can ordinarily review the complaint to determine whether the economic loss doctrine applies because the court simply considers the contract and the alleged losses at issue. *See Montanez v. HSBC Mortgage Corp. (USA)*, 876 F. Supp. 2d 504, 519 n.17 (E.D. Pa. 2012); *Air Products & Chemicals, Inc. v. Eaton Metal Products Co.*, 256 F. Supp. 2d 329, 334–40 (E.D. Pa. 2003). In this case, however, the parties dispute the relevant contract terms necessary to determine whether the economic loss doctrine applies. Therefore, it is also premature at this stage to dismiss TVM's fraud claim based on the economic loss doctrine without further inquiry into the facts alleged.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| COVERTECH FABRICATING, INC., | ) | |
|---|---|---|
| | ) | CIVIL ACTION NO. 3:13-150 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| TVM BUILDING PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Now, this 10th day of June 2014, upon consideration of Covertech's motion to dismiss Count IV of TVM's amended counterclaim (ECF No. 53), and for the reasons stated in the accompanying opinion, it is hereby ORDERED that the motion is DENIED.

It is FURTHER ORDERED that a status conference in this case is scheduled for June 24, 2014, at 1:30 p.m.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE