IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COVERTECH FABRICATING, INC., | ) | |
| | ) | CIVIL ACTION NO. 3:13-150 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| TVM BUILDING PRODUCTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER OF COURT

### I.    SYNOPSIS

This matter comes before the Court on the Motion of TVM Building Products,

Inc. for Amended and Additional Findings Pursuant to FRCP 52(b), for Altered and

Amended Judgment Pursuant to FRCP 59(e), and for New Trial Pursuant to FRCP 54(a).

ECF No. 116. The Defendant opposes this motion. ECF No. 125. For the reasons that

follow, the Court will **DENY** TVM's motion.

### II.    JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §

1332(a)(2) and (c)(1) because the parties are of diverse citizenship and the amount in

controversy exceeds $75,000, excluding interest and costs. ECF No. 1 at 5. The Court

also has subject matter jurisdiction over the claims pursuant to 28 U.S.C. §§ 1331,

1338(b), and 15 U.S.C. § 1121, because this action involves claims for infringement of a

federally-registered trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. §

1114; for federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a); and for dilution of a federally-registered trademark in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). The Court also exercises supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same "case or controversy" under Article III of the United States Constitution.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), because TVM is subject to personal jurisdiction here under 28 U.S.C. § 1391(b)(2), and because a substantial part of the events or omissions giving rise to the claims arose in the Western District of Pennsylvania.

## III.     FACTUAL AND PROCEDURAL BACKGROUND[1]

The Court held a bench trial from October 20, 2014, through October 24, 2014. The parties filed proposed findings of fact and conclusions of law on April 9, 2015. ECF Nos. 96 and 97. The parties filed responses on May 21, 2015. ECF Nos. 100 and 101. The Court issued a Memorandum Opinion and Order ("**Opinion**") on August 15, 2015. ECF No. 104. In the Opinion, the Court held that Defendant TVM Products (i) willfully infringed Plaintiff Covertech Fabricating's rFOIL and CONCRETE BARRIER trademarks and engaged in unfair competition by improperly using Covertech's ULTRA CONCRETE UNDERPAD, CONCRETE UNDERPAD, and ULTRA NT

---

[1] The Court detailed the factual and procedural background of this case in its Memorandum and Order dated August 14, 2015. ECF. No. 104. Because familiarity with that Memorandum and Order is presumed, this section is limited to the facts relevant to the disposition of the instant motion.

RADIANT BARRIER marks, (ii) committed fraud on the United States Patent and Trademark Office (**"PTO"**) by making materially false statements in connection with its registration of the ULTRA NT RADIANT BARRIER mark, and (iii) breached its contract with Covertech by failing to pay invoices. *Id.* Further, the Court held in favor of Covertech on each of TVM's counterclaims for declaratory judgment, breach of contract, unjust enrichment, misappropriation, fraudulent concealment, trademark infringement, and fraud on the PTO. *Id.*

TVM filed a brief in support of the instant motion on September 11, 2015, seeking relief in the form of amended and additional findings pursuant to FRCP 52(b), altered and amended judgment pursuant to FRCP 59(e), and new trial pursuant to FRCP 59(a). ECF No. 117. Covertech filed a brief in opposition to TVM's motion on October 5, 2015. ECF No. 125.

For the reasons stated below, the Court will deny TVM's Motion.

## IV.    STANDARD OF REVIEW

The purpose of a motion under FRCP 52(b) or 59(e) is to correct manifest errors of law or fact or to present newly-discovered evidence. *U.S. v. Municipal Authority of Union Tp.*, 181 F.R.D. 290, 293 (M.D.Pa. 1996) (citing *Universal Premium Acceptance Corp. v. York bank & Trust Co.*, 1996 WL 432488, at *4 (E.D.Pa. July 30, 1996)).

FRCP 52(b) provides that "the court may amend its findings—or make additional findings" in a bench proceeding after the court has issued findings of fact and

3

conclusions of law. Fed. R. Civ. P. 52(b); *Allegheny Coupling Co. v. Betts Indus., Inc.*, C.A. No. 06-76, 2012 WL 4478309, at \*2 (W.D.Pa. Sept. 27, 2012). To prevail on a Rule 52(b) motion, the movant must show that the amended or additional findings are necessary to "correct manifest errors of law or fact" contained in the Court's findings of fact or conclusions of law. *See Allegheny Coupling Co.*, 2012 WL 4478309, at \*2. A Rule 52(b) motion "is not a vehicle for relitigation of issues previously adjudicated, and may not be employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." *See id.* (internal quotation marks and citations omitted). The "manifest injustice" showing required to prevail on a Rule 52(b) motion is similar to the standard required in a Rule 59(e) motion to amend or alter a judgment. *See id.*

A court may alter or amend a judgment pursuant to Rule 59(e) if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice. *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)); *see also Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). As this Court has stated, a motion for reconsideration will not be granted "when the motion simply restyles or rehashes issues previously presented." *N. Am. Communs., Inc. v. InfoPrint Solutions Co., LLC*, 817 F.Supp.2d 623, 640

4

(W.D.Pa. 2011). *See also Lazaridis*, 591 F.3d at 669 (upholding a district court's denial of a motion for reconsideration because advancing "the same arguments that were in [the movant's] complaint and motions" was "not a proper basis for reconsideration"). "A motion for reconsideration addresses only factual and legal matters that the court may have overlooked...[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *N. Am. Communs.*, 817 F.Supp.2d at 640 (internal quotation marks and citations omitted).

Rule 59(a) permits a court to "grant a new trial on all or some of the issues" in a nonjury trial. Fed. R. Civ. P. 59(a). In the Third Circuit, a new trial should be granted pursuant to Rule 59(a) "only when the great weight of the evidence or errors at trial produce a result inconsistent with substantial justice." *U.S. v. Municipal Authority of Union Tp.*, 181 F.R.D. 290, 293 (M.D.Pa. 1996) (citing *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735-36 (3d Cir. 1988)).

## V.    DISCUSSION

TVM does not base the instant motion on the existence of an intervening change or the availability of new evidence. The Court therefore assesses its motion to determine whether there is a need to amend or make additional findings to correct manifest errors of law or fact, *See Allegheny Coupling*, 2012 WL 4478309, at *2, and whether altered or amended judgment is needed to correct a clear error of law or to prevent a manifest injustice. *See Lazaridis*, 591 F.3d at 669. The Court assesses TVM's motion for a new trial

5

to determine whether the great weight of evidence or errors at trial have produced a result inconsistent with substantial justice. *See Municipal Authority of Union,* 181 F.R.D. at 293.

TVM argues that the Court should make amended and additional findings of fact and conclusions of law as to (i) the rFOIL mark, (ii) the CONCRETE BARRIER mark, (iii) the ULTRA NT RADIANT BARRIER mark, (iv) the product numbering system, (v) TVM's asserted defense of acquiescence, (vi) TVM's fraud on the PTO, (vii) Covertech's damages, and (viii) TVM's claim against Covertech for fraudulent concealment. ECF No. 117. TVM also moves for new trial on the issue of Covertech's damages. *Id.* at 25-28.

Covertech argues that TVM's motion fails to meet the applicable legal standards and should therefore be denied. ECF No. 125 at 4-5. Covertech argues in the alternative that each of TVM's requests for relief fails individually. *Id.* at 5-26.

The Court will address each of TVM's requests for relief individually. For the reasons set forth below, the Court agrees with Covertech and finds that TVM's requests for relief fail to meet the standards applicable to altered and amended findings and conclusions pursuant to FRCP 52(b), altered and amended judgment pursuant to FRCP 59(e), and new trial pursuant to FRCP 59(a). The Court therefore denies TVM's motion in its entirety.

### a. The Court's findings and conclusions as to the rFOIL mark

The Court held that TVM willingly infringed upon Covertech's registered and incontestable rFOIL trademark. ECF No. 104 at 46. TVM now moves the Court to "amend and make additional find[ings] of fact and [to] alter its legal conclusions" as to the rFOIL trademark. ECF No. 117 at 2. TVM makes three principal arguments with regard to the rFOIL trademark: (i) TVM should not be held liable for infringement to the extent the rFOIL trademark appeared on the website tvmbuildingproducts.com, because this is its distributor's website; (ii) the Court improperly relied on only one instance of *de minimis* actual confusion (Mr. Higgins' testimony) in its likelihood of confusion analysis; and (iii) the Court improperly concluded, based on the testimony of Covertech employees, that TVM tried to pass off other manufacturers' products as Covertech's rFOIL product. *Id.* at 5-6.

In opposition to TVM's motion, Covertech argues that (i) the evidence at trial established that TVM had influence and control over the tvmbuildingproducts.com website and thus the Court properly based its finding of infringement on the use of the rFOIL trademark on this website; (ii) Mr. Higgins' testimony was not the only evidence of actual confusion on which the Court relied in its likelihood of confusion analysis and further, even if it had been the only evidence of actual confusion, this is only one of ten factors that comprise the likelihood of confusion analysis in the Third Circuit and therefore is not dispositive; and (iii) TVM failed to demonstrate that the Court's finding

7

that TVM attempted to impermissibly pass off other manufacturers' products as Covertech's rFOIL product constitutes a "manifest error." ECF No. 125 at 6-8.

As to TVM's argument that it should not be liable for infringement to the extent the rFOIL trademark appeared on its distributor's website, the Court finds that it already considered and rejected TVM's argument that it should not be liable for infringement to the extent the rFOIL trademark appeared on a distributor's website. ECF No. 104 at 37-38; ECF No. 96 at ¶ 103. Specifically, the Court noted that TVM has influence over what is put on the website and that there are links from the TVM website to its distributors, including links to the website in question. *Id*. This argument as to the rFOIL trademark is thus improper on the instant motion as it amounts to mere reargument of the issues already argued and decided at trial. *See Allegheny Coupling,* 2012 WL 4478309 at *2. TVM also urges the Court to give weight to the testimony of Peter Clarke, a current Covertech employee, wherein he stated that TVM should not be held responsible for content posted on third-party websites generally. ECF No. 117 at 5. As Covertech points out in its opposition, however, Mr. Clarke's testimony about third-party websites generally does not negate the Court's finding that, based on the evidence presented at trial and under the circumstances of this particular case, TVM had considerable control and influence over the content posted to the website at issue and is thus liable for the use of infringing marks that appeared on that site.

TVM also asserts that the testimony of Dan Higgins constitutes *de minimis*

8

evidence that does not support a finding that TVM willfully infringed upon Covertech's rFOIL trademark. ECF No. 117 at 7. However, in the Opinion, the Court acknowledged the fact that "Covertech only presented the direct testimony of one customer regarding his actual confusion about the origin of the product," but still concluded that Covertech had succeeded in establishing that actual confusion had resulted from TVM's use of Covertech's trademark. ECF No. 104 at 46. In addition to Mr. Higgins' testimony, the Court found credible and gave weight to the testimony of Covertech employees regarding consumer confusion and concluded based on this testimony that "confusion is ongoing" with regard to the rFOIL trademark. *Id*.

Moreover, evidence of actual confusion is only one of ten factors that constitute a likelihood of confusion analysis in the Third Circuit. *See Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 293 (3d Cir. 1991). TVM does not make any argument with regard to the other nine factors—seven of which the Court found weighed in Covertech's favor and the other two of which the Court found did not weigh in favor of either party. Thus, even assuming, *arguendo*, that TVM had convinced the Court that the evidence on which the Court relied in reaching its finding of actual confusion was indeed *de minimis*, the other factors weigh so overwhelmingly in favor of Covertech that this would not alter the Court's ultimate finding of infringement. TVM has failed to prove that such finding was "manifest error" as is required on this motion.

Lastly, TVM asserts that the testimony of Covertech's employees does not

support the Court's finding that TVM tried to pass off other manufacturers' products as Covertech's rFOIL to other customers such as BCI and Metal Building Supply. ECF No. 117 at 6. In its Proposed Findings of Fact and Conclusions of Law, TVM raised the argument that Mr. Higgins' testimony should be discredited because of his misrecollection of the color of the label attached to the product he purchased from TVM. *Id*. at 391. The Court expressly addressed this point in its Opinion and stated that it nevertheless found valid Mr. Higgins's statements regarding the provenance of the product he ordered and his subsequent interactions with TVM and Covertech. ECF No. 104 at 43. Additionally, the record supports the Court's finding that customers received non-Covertech products when they believed they would receive Covertech's rFOIL product. *See* Tr. Vol. II at 162-67.

The Court concludes that TVM's arguments on this motion as to the rFOIL trademark constitute mere reargument of points already raised with the Court and are thus improperly raised on the instant motion. TVM has failed to convince the Court that its finding that TVM infringed upon Covertech's rFOIL trademark constituted manifest error. TVM's motion is denied as to the rFOIL trademark.

### b. The Court's findings and conclusions as to the CONCRETE BARRIER mark

The Court held that Covertech proved federal trademark infringement against TVM regarding its CONCRETE BARRIER trademark. ECF No. 104 at 62. TVM now moves the Court to amend its findings "to determine that the evidence presented by

10

Covertech at trial failed to establish that TVM sold any CONCRETE BARRIER product and that Covertech's exhibits indicate that TVM did not purchase any CONCRETE BARRIER product from either Reflectrix or Soprema." ECF No. 117 at 9. In support of its motion with regard to the CONCRETE BARRIER trademark, TVM disputes the Court's finding that "Ultra CBF" is sufficiently similar to "CONCRETE BARRIER" to constitute trademark infringement. *Id*. TVM also disputes the Court's finding of confusion in the marketplace based on Mr. Higgins' testimony and the testimony of Covertech's sales people. *Id*. at 9-10. TVM argues that while the Court found the testimony of Covertech's sales people to be credible, "Clarke's own testimony and documentary evidence show otherwise." *Id*. at 10.

In opposition to TVM's motion, Covertech argues that (i) TVM's claim that it never sold CONCRETE BARRIER product is undermined by evidence the Court cited in its analysis; (ii) the Court properly concluded that TVM promoted CONCRETE BARRIER in its catalogues, and that TVM ignored the Court's express findings on this point; and (iii) TVM is mistaken in suggesting that Covertech was required to prove actual confusion with regard to CONCRETE BARRIER and that the burden was instead to prove a likelihood of confusion. ECF No. 125 at 10-11.

In the Opinion, the Court considered and rejected TVM's argument that it never sold any CONCRETE BARRIER product. The Court expressly found that the names "CBF" and "CONCRETE BARRIER Foil" are "sufficiently similar to warrant a finding

11

that TVM was copying Covertech's mark." ECF No. 104 at 54. Further, as discussed above, and after considering TVM's argument to the contrary, the Court determined that TVM exercised sufficient control and influence over the www.tvmproducts.com website such that it could be held liable for infringing marks that appear on that website. *Id.* at 54-55. These instances of TVM's use of the CONCRETE BARRIER trademark are sufficient to support the Court's finding that TVM used Covertech's trademark in commerce. As Covertech notes in its brief in opposition to the instant motion, TVM's assertion that the sales records indicate that it did not purchase any 1620 product during the relevant time frame does not conflict with the Court's finding on this point, as TVM may have purchased reflective product from other manufacturers while still using the Covertech trademark in marketing materials and channels of commerce. TVM has failed to demonstrate that the Court's finding on this point was manifest error.

TVM also asserts that the Court's finding of a likelihood of confusion with regard to the CONCRETE BARRIER mark was manifest error. ECF No. 117 at 10-11. As noted above, however, actual confusion is only one factor in the likelihood of confusion analysis. The Court concluded, based on the totality of the ten-factor likelihood of confusion test, that there was sufficient evidence of a likelihood of confusion among customers as to the CONCRETE BARRIER trademark. ECF No. 104 at 59-62. In support of its conclusion as to consumer confusion, the Court relied on the testimony of

Covertech employees, which it found to be credible, and which stated that they had witnessed confusion in the marketplace stemming from advertising and the www.tvmbuildingproducts.com website. TVM has failed to demonstrate that the Court's finding of a likelihood of confusion as to the CONCRETE BARRIER trademark constituted manifest error.

### c. The Court's findings and conclusions as to the ULTRA NT RADIANT BARRIER

The Court held that Covertech established an Unfair Competition claim against TVM for use of its ULTRA NT RADIANT BARRIER trademark. ECF No. 104 at 76. TVM now moves the Court to amend and alter its findings and its legal conclusion as to this mark. ECF No. 117 at 11. In support of its motion, TVM argues that the Court's conclusion that Covertech was the first to sell products using the ULTRA NT RADIANT BARRIER mark in commerce is contrary to the testimony presented at trial, and asks the Court to find instead that TVM was the first entity to sell a product under this trademark in commerce. *Id.* at 13-15. TVM asserts that the Covertech sale on which the Court relied in reaching its conclusion was not a public sale "as a matter of law." *Id.*

In opposition to TVM's motion, Covertech argues that the Court already considered and rejected TVM's claim that Covertech's first sale was not sufficiently public, and that the evidence presented at trial demonstrated that Covertech currently uses ULTRA NT RADIANT BARRIER in commerce and had so used it continuously since 2003. ECF No. 125 at 12. Covertech argues further that *Gen. Bus. Servs., Inc. v.*

13

*Rouse*, 495 F.Supp. 526 (E.D.Pa. 1980), cited in TVM's brief in support of the instant motion, does not lay out a blanket rule that any sale from a manufacturer to its exclusive distributor cannot constitute a first use for purposes of trademark infringement. *Id*. at 12-13.

The Court finds that the Court already addressed and rejected each of TVM's arguments as to the ULTRA NT RADIANT BARRIER trademark. The Court declines to conduct a rehearing on the merits of these arguments on the instant motion. Specifically, in its Opinion, the Court considered TVM's assertion that Covertech's 2003 sale to TVM was not sufficiently "public" to constitute a "first sale" for purposes of trademark rights. The Court took note of TVM's argument that "a sale to one distributor does not constitute a sale in interstate commerce," ECF No. 104 at 63, but nevertheless concluded that Covertech is the owner of the mark. *Id*. at 66. The Court based this conclusion on the testimony of Covertech employees which it found credible and which supported a finding that Covertech had sold the mark as early as 2003 and had been selling it in interstate commerce continuously since then. *Id*. The Court also expressly stated that the sales since 2003 have been "sufficiently public to warrant a finding that Covertech has sold the product in interstate commerce since 2003." *Id*. TVM has thus failed to demonstrate that the Court's findings as to the ULTRA NT RADIANT BARRIER mark constituted manifest error.

### d. The Court's findings and conclusions as to the product numbering system

The Court found that TVM developed a new product numbering system to replace Covertech's existing product numbering system. ECF No. 104 at 9. The Court found that Mr. Orologio initiated the development of the new codes because there had been errors in the orders coming to Covertech. *Id*. TVM now moves for the Court to amend its findings to indicate that TVM developed the numbering system out of necessity to handle its expanding product base. ECF No. 117 at 17.

In opposition to TVM's motion, Covertech argues that the Court should reject TVM's motion to amend its findings with regard to the numbering system, because TVM's Motion merely "repeat[s] *verbatim* its suggested findings of fact, which the Court already considered and rejected-in-part." ECF No. 125 at 13-14 (emphasis in original). Further, Covertech argues that TVM's characterization of the numbering system in its motion is contrary to Mr. Orologio's testimony, which the Court found to be credible. *Id*. at 14.

The Court finds that TVM's argument with regard to the product numbering system invites the Court to rethink issues it already considered. *See* ECF No. 104 at 9. The Court based its findings with regard to the product numbering system on the testimony of Mr. Orologio, which it found to be credible. *See* ECF No. 104 at 9, 107. The Court does not reconsider its credibility assessment on the instant motion and concludes that the evidence presented at trial supports its findings as to the product

15

numbering system.

### e. The Court's conclusion as to TVM's defense of acquiescence

TVM raised the defense of acquiescence to the infringement claims asserted by Covertech. The Court found that there was no indication that Covertech impliedly consented to TVM's use of its trademarks and therefore held that the doctrine of acquiescence was inapplicable. ECF No. 104 at 62. TVM now moves for the Court to "alter its legal conclusion and determine that there was acquiesce[nce] on the part of Covertech." ECF No. 117 at 22. In support of its motion, TVM cites testimony from Covertech employees and argues that Covertech knew that TVM was using Covertech's trademarks and numbering system, but never requested that TVM stop using these trademarks or numbering system. *Id*. at 18-21.

In opposition to TVM's motion, Covertech argues that TVM fails to establish that the Court committed manifest error in holding that Covertech did not consent to trademark infringement. ECF No. 125 at 14. Specifically, Covertech argues that in its motion, TVM merely "recycles its claim that Covertech failed to take measures to assert[] its trademark rights," and "distort[s] the testimony of Messrs. Orologio and Starr." *Id*.

The Court finds that TVM raises the same arguments in support of its defense of acquiescence as it did prior to the Court's issuance of its Opinion. *See* ECF No. 96 at ¶¶ 319-20, 325-27, 404-07, 422-28.With these arguments before it, the Court concluded that

16

TVM had failed to present evidence to support a finding that Covertech consented to infringement of its trademarks and product numbering system. ECF No. 104 at 62. TVM includes detailed citations to the record in its brief in support of the instant motion, but this testimony fails to establish that the Court committed manifest error in finding that TVM failed to prove that Covertech consented to the infringement of its trademarks and product numbering system. Covertech cites, for example, the testimony of Messrs. Orologio and Starr for the proposition that "Covertech knew as early as 2007 that TVM was selling product manufactured by Reflectix and using the names and TVM code numbers which Covertech claimed to have owned." ECF No. 117 at 17-21. However, Mr. Orologio testified only that he knows (presently) that TVM continued to utilize the product numbering system—not that he knew of this use in 2007. *Id*. at 18-19. Similarly, Mr. Starr testified that it was "okay" for TVM to continue using the names and product numbers "as long as they were still buying [Covertech] products." The Starr testimony that TVM cites does not indicate that Covertech ever consented to use its marks or product numbering system in connection with non-Covertech products. *See id.* TVM cites no evidence presented at trial that establishes that Covertech was aware of and consented to TVM's use of its marks and product numbering system *in connection with non-Covertech products.*

Having considered TVM's arguments as to acquiescence prior to issuing the Opinion and having reviewed its evidence in support of the instant Motion, the Court

17

finds that TVM has failed to satisfy its burden of establishing manifest error. The Court thus declines to alter its legal conclusion as to acquiescence.

### f. The Court's conclusion as to TVM's fraud on the PTO

The Court held that TVM fraudulently obtained registration of the ULTRA NT RADIANT BARRIER trademark and that Mr. Boulding knowingly made false, material representations with the intent to deceive the PTO. ECF No. 104 at 96. TVM moves for the court to alter its conclusion of law and to amend its judgment to determine instead that Mr. Boulding's statements to the PTO were not fraudulent. ECF No. 117 at 25.

In opposition to TVM's motion, Covertech argues that TVM has failed to come forward with any evidence to support its assertion that the false information on the application amounted to a mere mistake. ECF No. 125 at 15-16. Further, TVM asserts that TVM's motion does not demonstrate that the Court made a manifest error, but rather indicates a disagreement with the Court's determination that Mr. Boulding was not a credible witness. *Id*. at 16.

In support of this motion as to fraud on the PTO, TVM restates its argument that Covertech's sale of ULTRA NT RADIANT BARRIER was not sufficiently public to constitute a first use of the mark. ECF No. 117 at 23. Having already addressed and rejected this argument in the Opinion and above, the Court does not discuss it in this section.

TVM also argues that Boulding was "mistaken as to the date of the first use" of

18

the ULTRA NT RADIANT BARRIER mark and that his statement that the first use was at least as early as 2006 "was neither false nor fraudulent." *Id.* at 25. These are arguments that the Court rejected in the Opinion. Indeed, the Court expressly declined to "lend credence to Defendant's suggestion that the incorrect year merely constituted a 'typo,'" and found that "Mr. Boulding's statements amounted to more than a simple oversight." ECF No. 104 at 94, 96.

TVM's remaining arguments call into question the Court's credibility analysis of Mr. Boulding. The Court noted at several points in the Opinion that it found Mr. Boulding's testimony not to be credible. *See id.* at 96, 101, 105. The Court will not revisit this credibility assessment on the instant motion for reconsideration.

TVM has failed to establish that the Court committed manifest error in concluding that TVM committed fraud on the PTO through its registration of the trademark ULTRA NT RADIANT BARRIER. Its motion is thus denied as to this count.

### g. The Court's findings and conclusions as to Covertech's damages

The Court entered a \$4.7 million judgment against TVM for its infringement of Covertech's trademarks. ECF No. 104 at 110. TVM now moves for the Court to amend its findings of fact and to alter its conclusions of law to reduce the amount of damages entered against TVM. ECF No. 117 at 28. TVM also argues that the Court should conduct a new trial on the issue of damages and asserts that the information upon which the Court relied was "irrelevant to the sale of the CONCRETE BARRIER,

19

CONCRETE UNDERPAD[,] and ULTRA CONCRETE UNDERPAD products." *Id.*

In opposition to the instant motion, Covertech argues that the Court has already considered and rejected the arguments that TVM raises with regard to damages. ECF No. 125 at 17. Covertech also argues that TVM makes conclusory assertions that the Court's damages award is excessive and punitive, and that TVM's statement that the damages award bears no relationship to harm suffered by Covertech is unsupported by the evidence on which the Court relied in determining appropriate damages. *Id.* at 18.

In reaching its determination as to Covertech's damages, the Court relied on sales figures from 2009 to 2013 that TVM introduced at trial. ECF No. 104 at 89. The Court noted that Covertech was required only to prove sales in the metal building industry. *Id.* at 89. TVM restates its argument, raised in other sections of its motion and prior to the Court's Opinion, that TVM cannot be liable for infringement of marks without evidence of sales of those products. ECF No. 117 at 26-28. TVM identifies data indicating its purchasing practices during the relevant years. *Id.* at 25-27. However, damages under the Lanham act are established by proof of sales practices. *See* 15 U.S.C. § 1117(b); ECF No. 104 at 89-90. As discussed above, TVM's analysis of purchases during the relevant years does not preclude a finding of infringement and similarly does not alter the Court's damages analysis.

Further, the Court expressly found that TVM failed to introduce any evidence to support Mr. Boulding's asserted profit margin of 30%, and thus determined that TVM

had proved no cost or deduction. *Id.* The Court thus rejects TVM's invitation, which it raises for a second time on the instant motion, to reduce its finding of damages "to reflect TVM's profit margin of 30%." ECF No. 117 at 28. The Court used its discretion to reduce the damages amount by 30% and found this amount to be just under the circumstances of this case and taking into account its finding of intent and willful use of a counterfeit mark on the part of TVM. ECF No. 104 at 89-90.

The Court thus denies TVM's motion to amend its findings of fact and alter its conclusions of law thereby reducing the amount of damages entered against TVM. The Court also concludes that TVM has failed to carry the heavy burden of proving that the Court's determination of damages is contrary to the great weight of the evidence or would produce a result inconsistent with substantial justice, as is required to necessitate a new trial on the issue of damages. *See U.S. v. Municipal Authority of Union Tp.*, 181 F.R.D. 290, 293 (M.D.Pa. 1996) (citing *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735-36 (3d Cir. 1988)). TVM's motion is denied as to Covertech's damages.

## h. The Court's findings and conclusions as to TVM's claim against Covertech for fraudulent concealment

### i. Amended and additional findings of fact

TVM moves for the Court to make several additional or amended findings of fact related to its claim for fraudulent concealment. The Court finds that these proposed amended and additional findings of fact stem from either a misstatement of the Court's findings or TVM's disagreement with the Court's credibility assessment of relevant

witnesses including Mr. Orologio and Mr. Boulding. The Court declines to revisit the credibility assessment of witnesses on the instant motion and thus denies TVM's request for amended and additional findings of fact as to its claim for fraudulent concealment. TVM's requests for amended and additional findings of fact are discussed individually below.

TVM asks the Court to modify its finding of fact that "at some point, Covertech started" using a fire retardant additive and that this "product could be used in metal buildings." ECF No. 117 at 28-29. TVM moves for the Court to find instead that Covertech started using the fire retardant additive in 2001, that it was added to "put the insulation product into the interior of metal buildings," and that Mr. Orologio and Covertech "knew that FR was required...to use the product in the interior of metal buildings, and entrance into that market was the purpose for adding FR to the product." *Id.*

The Court finds that TVM has not presented evidence to establish that Covertech used fire retardant additive prior to 2001. The Court finds no manifest error in its finding that "at some point" Covertech began manufacturing the rFOIL product with fire retardant in it. ECF No. 104 at 28; Tr. Vol. V at 52:20-53:4. Moreover, the Court declines to revisit its credibility assessment of Mr. Orologio, and concludes that its extensive findings of fact as to Mr. Orologio's knowledge and the timing of that knowledge with regard to the need for FR additive to the rFOIL product are supported

22

by the evidence presented at trial. *See id.* at 28-33, 107; Tr. Vol. V at 52:20-53:4.

TVM also moves for the Court to amend its finding that TVM and Covertech first received reports of problems with rFOIL in 2004 to reflect that while Covertech received a report of problems in February of 2004, TVM did not receive such a report until October of 2004. ECF No. 117 at 29. The Court declines to amend its findings of fact as to the date on which TVM and Covertech learned of the problems with rFOIL. The Court's finding that "TVM and Covertech received first reports of problems with rFOIL" in 2004 is supported by the evidence presented at trial and by Mr. Orologio's testimony regarding the meeting held in the spring or summer of 2004, which the Court found to be credible. ECF No. 104 at 27, 107; Tr. Vol. V at 9:13-11:4. The Court denies TVM's request that it find that the 2004 meeting between Messrs. Orologio, Boulding, and Debreuil did not occur, and thus that TVM's awareness of UV additive was "irrelevant." ECF No. 117 at 31. As explained in the Opinion and herein, the Court found Mr. Orologio's testimony to be credible and thus found that the spring or summer of 2004 meeting did occur. The Court does not disturb these supported findings on the instant motion. *See* ECF No. 104 at 107.

TVM also asks the Court to find that TVM was not instructed to warn its customers about the UV issues in 2004, "as TVM was not even informed in 2004 that UV issues existed." ECF No. 117 at 32-33. The Court finds that this argument derives from TVM's request that the Court revisit its credibility assessment of Mr. Orologio and find

23

that the meeting in the spring or summer of 2004 did not occur. The Court has already declined to revisit this assessment and does not alter its finding that this meeting took place. The Court concludes that it did not commit manifest error in finding that TVM was instructed to warn customers of UV issues in 2004 as this finding is supported by the record. *See* Tr. Vol. V at 18:15-19:24. The Court thus denies TVM's request to strike this finding.

Similarly, the Court finds that TVM's request that it amend its findings to reflect that "[o]n September 28 20[05], Orologio and Boulding met and determined to warn their customers against using the product where it would be exposed to direct or reflected UV" and that Mr. Boulding "drafted and sent the warning that the two discussed, which encompassed the full understanding of the problem that TVM possessed based on their experience and discussions with Covertech," again derives from TVM's disagreement with the Court's credibility assessment of Mr. Orologio. As the Court noted above and in the Opinion, the Court credited Mr. Orologio's testimony. Mr. Orologio stated that, prior to September 29, 2005, he had discussions with Mr. Boulding during which he informed Mr. Boulding of risks of degradation from UV light and did not limit those comments to "open-sided buildings." Tr. Vol. V at 19:5-20:13. The Court will not reconsider this credibility assessment on the instant motion and thus denies TVM's request to amend its findings of fact as to TVM's knowledge of the risk of degradation prior to sending out the Urgent Notice.

24

TVM states that "the Court found that Orologio did not know in 2004 that UV light would degrade polyethylene film when it contacted the film through windows or after bouncing off concrete," and moves for the Court to amend its findings of fact to reflect that Mr. Orologio knew "at least as early as 2004, that light passing through a window or skylight or being reflected by concrete would degrade polyethylene film." ECF No. 117 at 30. The Court finds that TVM misstates the Court's findings of fact on this point. On the pages cited by TVM in its brief in support of the instant motion, the Court states that Mr. Orologio did not have this knowledge, "*prior* to 2004." *See* ECF No. 104 at 28-29 (emphasis added). Nowhere on the pages cited by TVM does the Court state that Mr. Orologio "did not know" of the degradation problems in 2004. The Court therefore denies TVM's motion to amend its findings on this point.

Again, TVM misstates the Court's findings of fact when it suggests that the Court found that "Orologio did not know to what purpose the reflective insulation that TVM was purchasing from Covertech was being applied by the end user." *See* ECF No. 117 at 30. The Court did not make this finding. Rather, the Court credited Mr. Orologio's testimony which stated that the product was being used for "multiple purposes." ECF No. 104 at 29; Tr. Vol. V at 15:20-16:4. TVM presents the Court with no evidence to support its contention that it committed a manifest error of fact regarding Mr. Orologio's knowledge of the purposes for which the product was being used. Thus, the Court denies TVM's motion to amend its findings on this point.

25

TVM takes issue with the Court's finding that Mr. Orologio instructed Mr.
Boulding to inform customers that the product should not be used where it would be
subject to direct or indirect UV. ECF No. 117 at 31-32. The Court concludes that the
Court's finding that Mr. Orologio instructed Mr. Boulding to inform customers that the
product should not be used where it would be subject to direct or indirect UV is
supported by the record. *See, e.g.,* Tr. Vol. V at 18:15-19:24. TVM cites to Mr. Boulding's
testimony that he "was aware in 2005 that *direct or reflected* UV could cause the product
to delaminate," but that reflected UV is different from indirect UV. ECF No. 117 at 32
(citing Tr. Vol. VI at 67:19-21). The Court notes that this statement is in direct conflict
with Mr. Orologio's testimony which indicated that Mr. Boulding was instructed to
warn customers about direct or indirect UV. Tr. Vol V at 18:15-19:24. The Court
concluded that Mr. Orologio's testimony was credible (ECF No. 104 at 107) and stated at
many points that it did not credit Mr. Boulding's testimony. *See id.* at 96, 101, 105. The
Court thus declines to amend its findings of fact because, as explained in the Opinion,
the evidence presented at trial, including the credible testimony of Mr. Orologio,
established that Mr. Boulding was also instructed to warn customers about the
problems with the product being exposed to indirect UV.

The Court found that "TVM had notice of at least two claims in 2006 that
involved UV degradation in enclosed buildings." ECF No. 104 at 30. TVM argues that
the exhibits cited by the Court in support of this finding relate to the same incident of

degradation and that a single incident is not enough to have put TVM on notice of a "massively-pervasive problem." ECF No. 117 at 34. The Court finds several flaws with this argument. First, Exhibits 134 and 138, which the Court cited in support of its finding that TVM had notice of at least two claims of degradation in 2006, indicate on their face that they relate to two separate instances of degradation given their dates and content, and TVM cites to no evidence to support its theory that they relate to one incident. *See* Ex. 134 (an April 9, 2006 email from Mr. Boulding discussing the "Ultra Violet problem"); Ex. 138 (an October 1, 2006 email from Mr. Boulding referencing a claim due to UV exposure that he had discussed with Mr. Orologio "[a] month or so ago"). TVM also fails to note the Court's citations to the record, which further support its original finding that Exhibits 134 and 138 establish that TVM was on notice of at least two instances of degradation in 2006. *See* ECF No. 104 at 30 (citing Tr. Vol. IV at 86:16-87:16, 87:25-88:4; Tr. Vol. V. at 142:1-143:3, 190:11-191:18 (Mr. Boulding admitting that there were at least two instances of UV degradation of which he was aware in 2006, but that he had forgotten about one of those instances)). Thus, the Court denies TVM's motion to modify its findings of fact as to the instances that put TVM on notice of the degradation issues in 2006.

TVM argues that it was a manifest error of fact for the Court to find that TVM sent a letter in January of 2007 warning its customers of the problems associated with indirect UV and reflective insulation and that it then had a managers' meeting in

December of 2007 to discuss the same issue. ECF No. 117 at 34. TVM claims that it was "clearly established" at trial that the letter was sent out in December of 2007. *Id.* The citations to the record that TVM provides do not support a finding that this was clearly established at trial and the Court does not agree that it "utterly defies logic" to conclude that TVM sent the letter in January 2007. *See id.* Indeed, as Covertech points out in its opposition, the letter is dated January 17, 2007, and Mr. Boulding stated that the letter appeared to have been written in January 2007. Ex. 135; Tr. Vol. IV at 90:1-15. TVM's conclusory statements fail to support its assertion that the Court's finding on this point constitutes manifest error. The Court therefore does not disturb its finding as to the date on which TVM sent this letter.

TVM asserts that it was manifest error of fact for the Court to find that Covertech began adding a UV inhibitor to its product in late 2006 or 2007 and that since its addition, no claims resulting from UV degradation have occurred. ECF No. 117 at 34-35. The Court concludes that TVM has failed to present evidence to support its assertion that the Court committed manifest error of fact. The Court's finding is supported by the testimony of Mr. Orologio, which the Court found to be credible. ECF No. 104 at 31. TVM's assertion that Mr. Orologio's testimony should not be credited because of claims for UV degradation of product sold in 2007 is afforded no weight because, as Covertech points out in its opposition to the instant motion, this theory does not account for the possibility that these claims related to products manufactured before the UV inhibitor

28

was added in 2006 or 2007 but sold in 2007. ECF No. 117 at 34-35; ECF No. 125 at 24. The Court thus does not disturb its findings on this point. *Id*.

TVM argues that it was a manifest error of fact for the Court to find that Mr. Orologio was only familiar with Quonset buildings that featured no windows or skylights, and only had a man-sized door and an overhead door for a truck. ECF No. 117 at 35. However, TVM misstates the Court's findings. The Court stated that Mr. Orologio did not know in April of 2006 "that *Mueller's* buildings contained skylights and windows"; the Court did not find that Mr. Orologio was "only familiar with Quonset buildings" in general, as TVM's brief suggests. ECF No. 104 at 32. TVM cites to Mr. Orologio's testimony wherein he states that there was a "possibility of UV lighting affecting [certain enclosed buildings] for five, ten, fifteen minutes during the course of the day, as the sun rotated...if the building had a window." ECF No. 117 at 35 (citing Tr. Vol V. at 120:23-121:12). This testimony, however, in which Mr. Orologio acknowledges that he knew in 2004 of the possibility of degradation where there was minimal exposure to sunlight, is not in conflict with Mr. Orologio's testimony or the Court's findings of fact as TVM suggests. *See* ECF No. 104 at 32 (finding that Mr. Orologio believed *prior* to 2004 that "the product probably would not deteriorate in applications where it was applied to the ceiling with minimal exposure to sunlight.").

TVM also asserts that brochures and print-outs of Mueller's website support a finding that Mr. Orologio was familiar with the various types of buildings into which

Covertech's reflective insulation product was being applied. ECF No. 117 at 35. However, aside from Mr. Boulding's testimony, TVM does not present any evidence that Mr. Orologio ever saw these brochures or the website, let alone that he took note of the types of buildings included in these media. *See id*. The Court therefore denies TVM's request to amend its findings of fact as to Mr. Orologio's awareness of the buildings into which Covertech's product was being applied.

TVM argues that it was a manifest error of fact for the Court to find that in TVM's damages calculation, Mr. Boulding did not discount for the fact that TVM was now competing against the rFOIL brand, or for circumstances such as customers complaining about Kelly Myers. ECF No. 117 at 36. However, TVM's assertion ignores Mr. Boulding's testimony wherein he acknowledges that he did not discount for complaints about "TVM and TVM's employees" or for the switch from rFOIL to private label from TVM in coming up with TVM's asserted damages. Tr. Vol. IV at 111:8-21, 115:22-116:8. Further, TVM's conclusory assertions, such as, "it was not TVM that would be hurt by not selling rFOIL; it was rFOIL that would be hurt by TVM's cessation of representing the brand," and "disassociation with the [rFOIL] brand was likely beneficial to TVM's business," fall short of supporting a conclusion that the Court committed a manifest error in finding to the contrary. *See* ECF No. 117 at 36. The Court thus denies TVM's motion to amend its findings as to TVM's damages calculation.

TVM asks the Court to make three additional findings of fact. ECF No. 117 at 36.

30

The Court rejects the first, which states in part that "Covertech actively concealed its knowledge of the full extent of the UV degradation issue...until TVM experienced claims of UV product degradation in 2006-2007." As explained at length above and in the Opinion, the Court's finding that Covertech informed TVM of the degradation issue at the meeting in the spring or summer of 2004 is supported by the record.

The Court also rejects the second proposed additional finding of fact, which asks the Court to find that "TVM justifiably trusted Covertech to ensure the products it sold to TVM were suitable to applications for which TVM made Covertech aware it was selling." ECF No. 117 at 37. Such a finding is not supported by the record. TVM's citations to the record in support of this finding indicate only that Covertech provided information to TVM about the primary uses of certain Covertech products. *See* Tr. Vol. III at 19:2-8, 20:19-24. TVM provides the Court with no support for the assertion that TVM's trust of Covertech "to ensure that its products were suitable to applications for which TVM made Covertech aware it was selling" would have been justifiable under the terms of their relationship and agreement.

Finally, the Court rejects TVM's third proposed finding of fact, which asks the Court to find that "TVM was not aware, until the *Mueller* deposition on November 17, 2011, that Covertech had known indirect UV would degrade the product since 2004." ECF No. 117 at 37. As explained above, the Court credited testimony that supports a finding that Covertech shared this information with TVM as early as 2004 and that TVM

was on notice of at least two instances of UV degradation in enclosed buildings in 2006.

## ii. Conclusions of law

### 1. The standard for fraudulent concealment

TVM states that the Court "concludes that the only way for fraudulent concealment to be committed is to make 'some affirmative independent act of concealment upon which a plaintiff justifiably relied.'" ECF No. 117 at 37 (citing ECF No. 104 at 105). TVM then states that such conclusion was "a manifest error of law," because "[f]raudulent concealment can also be found where a party, who has a duty to disclose a fact fails to do so." *Id.* (citing *Weisblatt v. Minn Mut. Life Ins. Co.*, 4 F.Supp.2d 371, 380 (E.D.Pa. 1998).

The Court finds that TVM has misconstrued the Court's statement of law as to fraudulent concealment. Indeed the Court did conclude that "[f]or the doctrine of fraudulent concealment to be applicable, a defendant must have committed some affirmative independent act of concealment upon which a plaintiff justifiably relied." ECF No. 104 at 105 (citing *Knapf v. St. Luke's Hosp.*, 4 A.3d 642, 650 (Pa.Super.Ct. 2010)). Such statement does not exclude the possibility that this "affirmative independent act of concealment" be established by silence where there is a duty to speak. Indeed, the very case that the Court cited for the fraudulent concealment standard expressly supports the view that fraudulent concealment can be found through silence where there is a duty to speak. *See Knapf*, 4 A3d at 650 ("There must exist a duty to speak before

32

fraudulent concealment can be found. Mere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment.").

The Court's analysis further demonstrates that the Court did not improperly deny TVM the ability to prove its claim of fraudulent concealment through evidence of Covertech's silence where it had a duty to speak. The Court expressly considered and rejected TVM's assertion that "Covertech committed fraud in failing to disclose to TVM knowledge about the potential degradation of the rFOIL product when exposed to UV light." ECF No. 104 at 105. This analysis indicates that the Court held TVM to the proper standard for fraudulent concealment under Pennsylvania law. The Court did not reject TVM's argument that Covertech is liable for fraudulent concealment because it did not constitute an act of concealment as a matter of law, but rather because it concluded that TVM failed to establish the necessary facts to support its claim for fraudulent concealment. *See* ECF No. 104 at 107. Because TVM has failed to establish that this conclusion constituted an error of law, the Court denies its motion on this point.

### 2. Covertech's awareness of degradation risks in 2004

TVM asserts that it was an error of law for the Court to conclude "that TVM has not established that Covertech was aware of 'the specific risks of using polyethylene in enclosed buildings,' *i.e.,* that Covertech was aware of the UV degradation problem." ECF No. 117 at 38. In support of this assertion, TVM submits that "[t]here can be no

33

credibility afforded to Orologio's statement that he was mistaken" as to his knowledge

of whether reflective insulation could be used in an enclosed building in 2004. *Id.* TVM

moves for the Court to modify its conclusion to state that "Covertech was aware of the

potential for degradation of polyethylene in enclosed buildings as a result of indirect

UV at least as early as 2004." *Id.*

The Court declines to revisit its credibility assessment of Mr. Orologio on the

instant motion. The Court specifically took note of Mr. Orologio's prior statement about

his knowledge of degradation as early as 2004, and Covertech's argument that this

statement was made in the context of his experience in the pool covering industry, but

that his knowledge did not carry over to rFOIL. ECF No. 104 at 106. As discussed above

and in the Opinion, the Court found Mr. Orologio to be a credible witness. *See id.* at 106-

07. The Court thus denies TVM's motion to modify its conclusion as to Covertech's

awareness of the potential for degradation in enclosed buildings in 2004.

### 3. TVM's failure to establish damages

TVM states that the Court committed an error of law in concluding that "TVM

did not establish it[s] damages on fraud to a reasonable degree of certainty." ECF No.

117 at 38 (citing ECF No. 104 at 107). In support, TVM cites to Pennsylvania case law

which holds that "damages need not be proved with mathematical certainty." ECF No.

117 at 38 (citing *E.C. Ernst, Inc. v. Koppers Co.,* 626 F.2d 324, 327 (3d Cir. 1980)). At no

point in the Opinion did the Court suggest that it required TVM to establish damages to

34

a mathematical certainty. Indeed, the passage TVM cites from the Opinion expressly states, "the Court finds that TVM has not established the damages it asserts it has suffered with a *reasonable* degree of certainty." ECF No. 104 at 107 (emphasis added). The Court made and discussed its findings which support the conclusion that TVM failed to establish damages with the requisite degree of reasonable certainty. *See* ECF No. 104 at 32-33. The Court thus denies TVM's motion to amend its conclusion that TVM failed to establish damages with a reasonable degree of certainty.

### 4. TVM's proposed additional conclusions of law

In addition to the above proposed amended conclusions of law, TVM also moves that the Court make six additional conclusions of law. The Court denies TVM's motion to make these additional conclusions of law for the reasons that follow.

In the first proposed additional conclusion of law, TVM asks the Court to conclude the following:

> Covertech, by virtue of their exclusive distributorship agreement with TVM, was in a confidential business relationship with TVM, under which it had an obligation to disclose the knowledge it had gained, at least as early as 2004, regarding indirect UV's ability to degrade polyethylene film. Because of their unique business relationship, Covertech was required to disclose its knowledge in 2004, Covertech actively concealed its knowledge from TVM by informing TVM that only direct and reflected UV caused degradation of polyethylene. Covertech made this type of representation throughout 2005, 2006, at least part of 2007.

ECF No. 117 at 39. The above conclusion of law is not supported by the evidence presented at trial and is directly contradicted by Mr. Orologio's testimony, which the

35

Court found to be credible. ECF No. 104 at 106-07. As discussed above, the Court does not revisit this credibility analysis on the instant motion and therefore denies TVM's motion for the above conclusion of law.

In the second proposed additional conclusion of law, TVM asks the Court to conclude that "TVM relied on Covertech's repeated representations that direct and indirect UV were the only types of exposure that caused degradation of the product." ECF No. 117 at 39. The Court finds no credible evidence in the record to support this conclusion and thus denies TVM's motion on this point.

In the third and fourth proposed additional conclusions of law, TVM asks the Court to conclude that "TVM's reliance on Covertech's representations were justified because TVM looked to Covertech for technical specifications and suitability of the product, and TVM did not have reason to dispute Covertech's representations because they did not receive any claims of product degradation due to UV that would put them on notice until 2007," and that "[a]lthough TVM did receive notice of one (1) case of degrading product in an enclosed building, a standalone occurrence was not enough to reasonably make TVM aware of the broader issue." *Id*. Above, the Court discussed its finding that TVM had notice of at least two claims of UV degradation in enclosed buildings in 2006. *See* ECF No. 104 at 30. Further, the Court did not lend credence to TVM's argument that Plaintiff's Exhibits 134 and 138 related to a single incident of degradation. Based on the evidence presented at trial and in accordance with its above

analysis, the Court denies TVM's motion as to these proposed additional conclusions of law three and four.

In the fifth proposed additional conclusion of law, TVM asks the Court to conclude that "TVM suffered damages as a result of Covertech's fraudulent concealment." *Id.* The Court concluded that TVM had not established fraudulent concealment and further concluded that TVM failed to establish that it was damaged with the requisite degree of reasonable certainty. ECF No. 104 at 107. For the reasons explained above, the Court denies TVM's motion to amend these conclusions and thus denies TVM's motion for this fifth proposed additional conclusion of law as unsupported by the credible evidence presented at trial.

In the sixth proposed additional conclusion of law, TVM asks the Court to conclude that "TVM did not learn that Covertech knew in 2004 that indirect UV would ca[u]se product degradation until November 17, 2011."ECF No. 117 at 39. This proposed additional conclusion of law again stems from TVM's disagreement with the Court's credibility assessment as to Mr. Orologio's testimony. The Court cited and credited Mr. Orologio's testimony which stated that he told Mr. Boulding about the possibility of degradation from direct or indirect light before November 17, 2011. ECF No. 104 at 29-30; Tr. Vol. V. at 21:14-25, 131-132. The Court thus denies TVM's motion to make this sixth conclusion of law.

## VI. CONCLUSION

For the reasons stated above, the Defendant's Motion for Amended and Additional Findings Pursuant to FRCP 52(b), for Altered and Amended Judgment Pursuant to FRCP 59(e) and for New Trial Pursuant to FRCP 59(a) (ECF No. 116) is denied.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COVERTECH FABRICATING, INC.,** | ) | |
| | ) | **CIVIL ACTION NO. 3:13-150** |
| Plaintiff, | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| v. | ) | |
| | ) | |
| **TVM BUILDING PRODUCTS, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this _**4th**_ day of November, 2015, the Court having considered

Defendant TVM Building Products, Inc.'s Motion for Amended and Additional Findings

Pursuant to FRCP 52(b), for Altered and Amended Judgment Pursuant to FRCP 59(e), and

for New Trial Pursuant to FRCP 54(a) (ECF No. 116), **IT IS HEREBY ORDERED** that

Defendant's request for relief is **DENIED.**

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**